**No. 24-60602**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

LUIS JAVIER SANCHEZ-ZURITA,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:24-CR-32-HTW-LGI

---

**BRIEF FOR APPELLANT LUIS JAVIER SANCHEZ-ZURITA**

---

**Omodare B. Jupiter** (MB #102054)
Federal Public Defender

**Michael L. Scott** (MB #101320)
Assistant Federal Public Defender
Northern and Southern Districts of Mississippi
200 South Lamar Street, Suite 200-N
Jackson, MS 39201
Telephone:  (601) 948-4284
Facsimile:  (601) 948-5510
Email: mike_scott@fd.org

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

*United States v. Sanchez-Zurita*
No. 24-60602

The undersigned certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case:

1. The Honorable Henry T. Wingate, United States District Judge, Jackson, Mississippi;

2. Luis Javier Sanchez-Zurita, Defendant-Appellant;

3. United States of America, Plaintiff-Appellee;

4. Counsel for Plaintiff-Appellee: Acting United States Attorney Patrick Lemon; and Assistant United States Attorneys Glenda R. Haynes and Jennifer Case; and

5. Counsel for Defendant-Appellant: Federal Public Defender Omodare B. Jupiter; Assistant Federal Public Defender Michael L. Scott; and Research & Writing Specialist Alexandra R. Rosenblatt.

This certification is made so that the judges of this Court may evaluate possible disqualification or recusal.

s/ *Michael L. Scott*
**Michael L. Scott**
Assistant Federal Public Defender

## REQUEST FOR ORAL ARGUMENT

Luis Javier Sanchez-Zurita requests oral argument on the issues of whether the Government breached its plea agreement and whether the district court imposed a procedurally and substantively unreasonable sentence. Oral argument would significantly aid the decisional process.

# TABLE OF CONTENTS

<u>page</u>:

CERTIFICATE OF INTERESTED PERSONS .........................................................i

REQUEST FOR ORAL ARGUMENT ................................................................. ii

TABLE OF CONTENTS....................................................................................... iii

TABLE OF CITATIONS .......................................................................................v

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES..............................................................................2

STATEMENT OF THE CASE.................................................................................3

SUMMARY OF ARGUMENT ............................................................................19

ARGUMENT .....................................................................................................20

I.  The Court should remand for resentencing before a different district judge because the Government breached the plea agreement. ....................................20

    A. Standard of review ........................................................................20

    B. When the Government breaches a plea agreement, a defendant is entitled to resentencing by a different judge..................................................................20

    C. The Government breached its plea agreement with Mr. Sanchez-Zurita. .....21

II. The district court violated Mr. Sanchez-Zurita's right to due process and committed significant procedural error by selecting a sentence based on clearly erroneous facts and by failing to adequately explain the nineteen-year upward variance. ...........................................................................................27

    A. Standard of review ........................................................................27

B. This Court should vacate Mr. Sanchez-Zurita's sentence because the district court relied on clearly erroneous facts..............................................................29

    1. The district court relied on three clearly erroneous facts. ........................29

        a. The district court relied on clearly erroneous facts about discrepancies in Mr. Sanchez-Zurita's name and birthdate......................................29

        b. The district court relied on clearly erroneous facts about Mr. Sanchez-Zurita's work history. .........................................................................31

        c. The district court relied on clearly erroneous facts about Mr. Sanchez-Zurita's association with a minor child. ..............................................32

    2. The errors harmed Mr. Sanchez-Zurita. ...................................................33

C. The district court procedurally erred by failing to adequately explain its chosen sentence. ...........................................................................................34

III. This Court should vacate the sentence and remand for resentencing because Mr. Sanchez-Zurita's sentence is substantively unreasonable. ..........................36

A. Standard of review.......................................................................................36

B. The sentence is substantively unreasonable. ................................................36

    1. The district court did not account for factors that should have received significant weight. ....................................................................................37

    2. The district court gave significant weight to an irrelevant and improper factor. ........................................................................................................38

CONCLUSION ......................................................................................................40

CERTIFICATE OF SERVICE ..............................................................................41

CERTIFICATE OF COMPLIANCE .....................................................................42

# TABLE OF CITATIONS

## Cases

*Gall v. United States*,
  552 U.S. 38 (2007) ........................................................... passim

*Holguin-Hernandez v. United States*,
  589 U.S. 169 (2020) ........................................................... 36

*Pepper v. United States*,
  562 U.S. 476 (2011) ........................................................... 39

*Roberts v. United States*,
  445 U.S. 552 (1980) ........................................................... 31

*Santobello v. New York*,
  404 U.S. 257 (1971) ........................................................... 20

*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) ............................................ 25

*Texas v. United States Env't Prot. Agency*,
  132 F.4th 808 (5th Cir. 2025) .......................................... 24

*United States v. Aguilar-Alonzo*,
  944 F.3d 544 (5th Cir. 2019) ............................................ 27

*United States v. Brown*,
  328 F.3d 787 (5th Cir. 2003) ...................................... 20, 21

*United States v. Cortez-Balderas*,
  74 F.4th 786 (5th Cir. 2023) ............................................ 36

*United States v. Cruz-Pallares*,
  396 F. App'x 170 (5th Cir. 2010) ................................... 34

*United States v. Delgado-Martinez*,
  564 F.3d 750 (5th Cir. 2009) ...................................... 27, 33

*United States v. Dinh*,
  920 F.3d 307 (5th Cir. 2019) ............................................ 27

*United States v. Escobedo*,
  757 F.3d 229 (5th Cir. 2014) ............................................ 21

*United States v. Harper*,
  643 F.3d 135 (5th Cir. 2011) ............................................ 20

*United States v. Harrier*,
  229 F. App'x 299 (5th Cir. 2007) ................................ 22, 23

*United States v. Leung*,
  40 F.3d 577 (2nd Cir. 1994) ............................................ 39

*United States v. Malmquist*,
  92 F.4th 555 (5th Cir. 2024) ............................................ 20

*United States v. Mishoe*,
 241 F.3d 214 (2d Cir. 2001)....................................................................... 37
*United States v. Munoz*,
 408 F.3d 222 (5th Cir. 2005)...................................................................... 20
*United States v. O'Bryant*,
 136 F.3d 980 (5th Cir. 1998)...................................................................... 31
*United States v. Perkins*,
 99 F.4th 804 (5th Cir. 2024) ...................................................................... 35
*United States v. Peterson*,
 977 F.3d 381 (5th Cir. 2020)...................................................................... 27
*United States v. Tobias*,
 662 F.2d 381 (5th Cir. 1981)...................................................................... 29
*United States v. Williams*,
 821 F.3d 656 (5th Cir. 2016)......................................................................29
*Williams v. United States*,
 503 U.S. 193 (1992) ...................................................................................27

**Statutes**

8 U.S.C. § 1326....................................................................................................... 3
18 U.S.C. § 3553 ....................................................................................... 37, 38, 39
18 U.S.C. § 3742 .................................................................................................... 1
28 U.S.C. § 1291 .................................................................................................... 1

**Rules**

Fed. R. App. P. 4.............................................................................................. 1, 16
Fed. R. App. P. 32 ............................................................................................... 42
Fed. R. Crim. P. 11.............................................................................................. 24

**United States Sentencing Guidelines**

USSG § 3E1.1(b) ................................................................................................. 23
USSG § 5H1.10.................................................................................................... 39

**Other Authorities**

*Latino Surnames: Formal and Informal Forces in the United States Affecting the
 Retention and Use of the Maternal Surname*,
 18 T. Marshall L. Rev. 1 (1992)........................................................................39

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of Mississippi entered a judgment of conviction and sentence in this case on November 22, 2024. ROA.39–45. That same day, Mr. Sanchez-Zurita filed a timely notice of appeal. ROA.46–47; *see* FED. R. APP. P. 4(b).

This Court has jurisdiction under 28 U.S.C. § 1291, which confers jurisdiction on the courts of appeals from final decisions of the district courts, and under 18 U.S.C. § 3742, as an appeal of a sentence imposed under the Sentencing Reform Act of 1984.

## STATEMENT OF THE ISSUES

**ISSUE ONE**: Though the parties did not enter a formal, written plea agreement in this case, the Government made a promise in exchange for Mr. Sanchez-Zurita's open plea. Should this Court vacate the defendant's sentence and remand for resentencing by a different judge when the Government breached its promise?

**ISSUE TWO**: Did the district court violate Mr. Sanchez-Zurita's right to due process and commit significant procedural error when it based the sentence on clearly erroneous facts about Mr. Sanchez-Zurita's surname, his work history, and his association with a minor child, and it failed to adequately explain the unusually harsh sentence?

**ISSUE THREE**: The district court sentenced Mr. Sanchez-Zurita to a statutory maximum sentence of twenty years—nearly nineteen years more than the upper end of the guideline range. Did the district court impose a substantively unreasonable sentence when it failed to consider whether the sentence was necessary to achieve the sentencing goals and whether the sentence created unwarranted disparities, and when it gave significant weight to a perceived discrepancy in Mr. Sanchez-Zurita's surname, an irrelevant and improper factor?

## STATEMENT OF THE CASE

An indictment charged defendant-appellant Luis Javier Sanchez-Zurita with one count of illegal reentry by a removed alien with an aggravated felony in violation of 8 U.S.C. § 1326(a)(1) and (b)(2). ROA.54.

## I.    Plea negotiations

Plea negotiations commenced shortly after indictment and centered on efforts to limit Mr. Sanchez-Zurita's exposure to an above-guideline sentence. *See* ROA.281–83. In response to the Government's opening plea offer, which included a proposed appeal waiver, defense counsel asked for language allowing Mr. Sanchez-Zurita to appeal an above-guideline sentence. ROA.282–83. Government counsel responded that she did not "want to write an appeal," and she noted that the Government's "recommendation is a within guideline sentence[](lower 50%)." ROA.282.

Defense counsel then wrote to ascertain the Government's position on an open plea. Specifically, defense counsel asked whether the Government would offer a three-level reduction for acceptance of responsibility and agree to make a guideline recommendation if Mr. Sanchez-Zurita entered an open plea. ROA.282. Government counsel responded that she would recommend "the 3 levels for acceptance." ROA.282.

Defense counsel wrote that he "[h]ate[d] to be obtuse but, is the lower 50% also if he pleads open?" ROA.281. Government counsel responded that if Mr. Sanchez-Zurita plead open the Government would not make a recommendation but would represent its satisfaction with a guideline sentence if the district court asked. Government counsel stated:

> I stand by the recommendation, however, when a defendant pleads open, there is no recommendation. If the court asks me during sentencing, I will state the government would be satisfied with a guideline sentence. But an open plea is without a recommendation, correct[?]

ROA.281. Defense counsel responded that he would meet with Mr. Sanchez-Zurita and report back. ROA.281. Defense counsel met with Mr. Sanchez-Zurita on the day of this email exchange, and again a week later. ROA.60.

## II.    Plea

Mr. Sanchez-Zurita plead guilty to the indictment with the assistance of an interpreter. ROA.60–62, 103. At the beginning of the change of plea hearing, Government counsel announced that Mr. Sanchez-Zurita would plead guilty "without the benefit of a plea agreement." ROA.59.

During the change-of-plea hearing, the district court discussed two topics important to this appeal.

## A.    The Government's role at sentencing

The district court twice addressed the Government's role in sentencing. First, the district court informed Mr. Sanchez-Zurita that it would solicit the Government's input on whether to sentence him under the sentencing guidelines or the statute.

| THE COURT: | … I [will] make my mind up whether to sentence you under the lesser standard of [the] sentencing guidelines or sentence you under the statute. |
|---|---|
| | Before I decide which one I want to use, I will allow you and your lawyer to tell me which one you would expect me to use. The prosecution will do the same thing. And so the prosecution might ask for more than you ask for, and I have to make the decision of whose recommendation I will follow. |
| | Do you understand that? |
| THE DEFENDANT: | Yes. |

ROA.80.

A few minutes later, the district court addressed the issue again. It noted that because Mr. Sanchez-Zurita was pleading without the benefit of a plea agreement, the Government would not make a recommendation in his favor.

| THE COURT: | So then to the defendant, you are pleading guilty without any plea bargaining here. So if there has been plea bargaining, the Government will make a recommendation. But since in your case you and your attorney have decided not to plea bargain, then the |
|---|---|

5

Government is not going to make a recommendation in your favor.

Do you understand that?

THE DEFENDANT:    Yes.

ROA.81.

## B.    Mr. Sanchez-Zurita's surname

The district court also addressed Mr. Sanchez-Zurita's surname. *See* ROA.85–92. It began by questioning Mr. Sanchez-Zurita about whether his last name came from his mother or father, and whether it included a hyphen. ROA.85. Defense counsel explained:

MR. SCOTT:    … What the [c]ourt is inquiring about is an American tradition where when a couple gets married, one spouse may take the other spouse's name and add it as a hyphen.

The Latin tradition, on the other hand, is that when a person is born, they get both last names. But the primary last name is the patronym, which in this case is Sanchez.

ROA.85. The district court was skeptical. It noted that it "understood that the mother's last name is the one that is utilized in Mexico." ROA.86.

To further investigate, the district court questioned Mr. Sanchez-Zurita. ROA.86. Consistent with defense counsel's explanation, Mr. Sanchez-Zurita testified that his "main last name" was his father's last name: Sanchez. ROA.86. He testified that he used both Sanchez and Zurita for official documents, but "between

6

people" he used only Sanchez. ROA.86–87. In response to repeated questioning by the district court, Mr. Sanchez-Zurita testified that he had never used "Javier" as his last name, he had never used "Javier-Sanchez" as his last name, he had never used "Javier-Zurita" as his last name, and he had never given his last name without mentioning Sanchez. ROA.88–89.

The district court then questioned the interpreter[1] about Mexican surnames and, specifically, about whether "the descendant line is maternal or paternal[.]" ROA.91. The interpreter's response tracked defense counsel's explanation and Mr. Sanchez-Zurita's testimony. He testified that the primary Mexican surname is "[p]aternal, from my father's line." ROA.91. He elaborated:

> My full name, legal name, is Vazquez Hernandez, but I usually go by Vazquez. I would agree with Mr. Sanchez-Zurita, if I would refer [to] myself in any legal proceeding, I would have to name myself my full legal name, including my mother's last name and my father's last name. But I would always refer [to] myself as Vazquez because it's always the paternal.

ROA.91–92.

## III.    The presentence report

Before sentencing, the U.S. probation office prepared a presentence investigation report ("PSR"). ROA.216–249. The PSR assessed a total offense level

---

[1] The district court asked defense counsel whether he objected to the court asking for the interpreter's description of surname customs in Mexico. ROA.91. Defense counsel did not object. ROA.91.

of 10 and a criminal history category of II. ROA.237, 240. The guideline
imprisonment range was 8 to 14 months. ROA.243.

The PSR also addressed three factors relevant here.

## A.    Mr. Sanchez-Zurita's surname and birthdate

The PSR identified the defendant's name as Luis Javier Sanchez-Zurita.
ROA.234. It also identified some "[a]lias(es)," all of which were variations of Mr.
Sanchez-Zurita's given name: Luis Sanchez, Luis J. Sanchez, Luis Javier Sanchez,
Luis Javier Sanchez-Zurita, Luis Javier Zurita, and Luis J. Sanchez Zurita.
ROA.234.

The PSR did not allege that Mr. Sanchez-Zurita had used these aliases. To the
contrary, it alleged that:

- During a 2016 arrest, "[t]he officer noted Sanchez-Zurita responded to
  the name Luis Sanchez and told him his full name was Luis Javier
  Sanchez-Zurita." ROA.238.

- During a 2024 arrest, Mr. Sanchez-Zurita "identified himself as Luis
  Sanchez (Sanchez-Zurita)." ROA.239.

- When an ICE agent interviewed him after the 2024 arrest, Mr. Sanchez-
  Zurita told the ICE agent that "his full name was Luis Javier Sanchez-
  Zurita." ROA.236.

The PSR identified Mr. Sanchez-Zurita's birth year as 1987. ROA.234. It
identified alias birth years as 1986 and 1989. ROA.234. The PSR did not provide a
reason for listing 1989, as an alias birth year. The PSR listed 1986 as an alias birth

year because a traffic citation from the 2024 arrest identified Mr. Sanchez-Zurita's birth year as 1986. ROA.240.

### B. Mr. Sanchez-Zurita's work history

The PSR described Mr. Sanchez-Zurita's work history. ROA.242–243. Though Mr. Sanchez-Zurita "was unable to provide any names or exact dates of his previous employers," he detailed his job duties, his hours, and his pay. ROA.242–43. He "was employed as a house painter from approximately 2021 to 2024." ROA.243. He "worked for various people in Rankin County, Mississippi" for "about 45 hours per week" and "earned $15 to $16 per hour." ROA.243. He "was employed in residential construction (painting, carpentry, welding, and roofing) in Brandon, Mississippi, from about 2017 to 2021 and earned $15 per hour." ROA.243. He "quit doing construction when the people he worked with went back to Mexico." ROA.243. He "worked for a landscaping company for about two months in approximately 2017." ROA.243. He earned "$11.50 per hour and quit the job because the pay was too low." ROA.243. From 2015 to 2017, he "worked for a fencing company," earning "$12.50 per hour" and working "40 hours per week." ROA.243.

The PSR described an interview with Wendy Ochoa-Hidalgo, who previously had a long-term relationship with Mr. Sanchez-Zurita and shared a daughter with him. ROA.241. Ms. Ochoa-Hidalgo "corroborated much of" Mr. Sanchez-Zurita's

"work history." ROA.243. She also reported that Mr. Sanchez-Zurita "gave her at least $150 per week and would give extra money and buy things for his daughter as needed." ROA.241.

### C.    Mr. Sanchez-Zurita's association with minor children

The PSR notes that Mr. Sanchez-Zurita pled guilty to gratification of lust in 2017. ROA.237–38. He was deported soon after. ROA.240.

Mr. Sanchez-Zurita returned to the United States sometime in 2020. ROA.236. In 2024, he was arrested for driving under the influence, child endangerment from driving under the influence, and reckless driving. ROA.239. He pled guilty in municipal court to driving under the influence and child endangerment from driving under the influence. ROA.239.

During the traffic stop, the traffic officer "observed a small child in the back seat" of Mr. Sanchez-Zurita's vehicle. ROA.239. Officers identified the child as Mr. Sanchez-Zurita's "five-year-old 'stepson.'" ROA.239. The PSR does not allege any wrongdoing toward the child other than endangerment from driving under the influence. *See* ROA.239.

## IV.    Sentencing

The district court sentenced Mr. Sanchez-Zurita to 240 months of imprisonment and three years of supervised release. ROA. 40–41 (judgment);

ROA.191–92 (sentencing). The sentence upwardly varied from the upper end of the guideline range by nearly nineteen years.

Several aspects of the sentencing hearing are particularly relevant to this appeal.[2]

## A.    The parties' positions on a variance

Before imposing its sentence, the district court advised the parties that it was "considering an upward variance based on [Mr. Sanchez-Zurita's] conduct, based on the characteristics of his criminal record, and all of the other factors the [c]ourt should consider in contemplating a variance." ROA.165–66.

The court solicited the Government's position on the variance:

| THE COURT: | … The prosecution is not asking for a variance; is that correct? |
|---|---|
| MS. HAYNES: | That's correct, Your Honor. |
| THE COURT: | The prosecution does not have a plea agreement with the defendant, though; is that correct? |
| MS. HAYNES: | That's correct, Your Honor. |
| THE COURT: | And so then the prosecution, I would imagine, would take no position as to |

---

[2] The sentencing hearing was lengthy and disjointed, in part because the probation officer discovered that he had failed to include information in the PSR that he had communicated to the district judge. *See* ROA.183–89. In the description of the sentencing hearing that follows, the undersigned focuses on aspects of the sentencing hearing that relate to the errors Mr. Sanchez-Zurita raises on appeal. The description is not intended to be an exhaustive or chronological record of the sentencing hearing.

whether the [c]ourt should order a variance or not. Or am I wrong?

MS. HAYNES:          You're correct with that, Your Honor.

THE COURT:          That the prosecution takes no position?

MS. HAYNES:          No position, Your Honor. We leave the matter of sentencing to the [c]ourt's discretion.

ROA.165–66.

The district court also solicited the defense's position on the variance. ROA.167. Defense counsel argued against an upward variance, maintaining that, among other things, the guidelines were "sufficient, but not greater than necessary, for a sentence." ROA.167–70. Counsel asked the court to impose "a guideline sentence." ROA.170.

Later in the hearing, defense counsel objected to the Government's failure to take a position on the variance, "not[ing] for the record" that "in discussions with the Government when we decided to plead open … there was what I understood as an agreement to recommend the guidelines, including the lower 50 percent."[3] ROA.189.

---

[3] Defense counsel's objection—made in the heat of the moment—did not precisely reflect the terms of the plea agreement, but it did alert the district court to the defense's position that the Government had breached the parties' plea agreement.

After the district court imposed the upward variant sentence, defense counsel objected "to the variance and the reasons given, especially the nature of the sentence that has been imposed. It is unreasonable in light of the factors the Court laid out, and we would object to the variance." ROA.202.

## B.    The reasons for the upward variance

The district court gave several reasons for the upward variance. *See* Order, Fifth Cir. ECF 52-1, at 2 (explaining that "[t]he district court identified at least seven reasons for its variance."). Three of the district court's reasons will be familiar to the reader and are particularly relevant to this appeal.

### 1.    Mr. Sanchez-Zurita's name and birthdate

In explaining its reasoning for the upward variance, the district court noted its "question about [Mr. Sanchez-Zurita's] name and about his age." ROA.182.

As in the change-of-plea hearing, Mr. Sanchez-Zurita's name and birthdate featured prominently in the sentencing hearing. ROA.174–178. The district court first identified a discrepancy in Mr. Sanchez-Zurita's birthdate. ROA.174. It explained that though the PSR identified Mr. Sanchez-Zurita's birth year as 1987 during his 2024 arrest, "they checked his driver's license, that—not driver's license, but some other kind of documentation—that documentation stated that his date of birth was … 1986." ROA.174. Defense counsel clarified that the … 1986, birth year came from a traffic citation from the 2024 arrest, and Mr. Sanchez-Zurita would not

13

have written his own citation. ROA.176. The court responded that it "assume[d]" that Mr. Sanchez-Zurita "gave the information" for the citation. ROA.176.

Then the district court turned to Mr. Sanchez-Zurita's surname. In response to the court's query about Mr. Sanchez-Zurita's name, defense counsel explained that the court and parties had "spent a considerable amount of time during the change of plea on this exact question." ROA.177. And the probation officer noted that he had "no reason to doubt that [the defendant's] full name is Luis Javier Sanchez-Zurita." ROA.177.

The district court asked the probation officer about the aliases identified in the PSR. ROA.177. The probation officer responded, "any time I see a different variation on a police report or on an NCIC report or in his ICE records, I will compile a list of names that he has gone by in the past, and that is why I included all of those on that page." ROA.177. The district court queried, "are you saying that he went by these names or these names were ascribed to him by others?" ROA.177–78. The probation officer clarified, "these are just names that I see on the citation or his NCIC report, and so any time I saw a different variation of a name, I would include that on the aliases." ROA.178.

The defense objected to the district court's use of the defendant's name and birthdate as grounds for a variance, arguing that they "are not issues that are sufficient to require a variance." ROA.190.

### 2.     Mr. Sanchez-Zurita's work history

The district court justified the upward variance in part because Mr. Sanchez-Zurita could not "show that he has been a gainful citizen. He can't identify employers. He can't identify any aspects of that employment in particular where it could be checked. … [H]e has not been productive … as a would-be citizen of this country." ROA.190–91.

In arguing for a guidelines sentence, defense counsel had explained that Mr. Sanchez-Zurita "has been a hard worker. He has been a provider." ROA.168–69. Defense counsel had emphasized that Mr. Sanchez-Zurita "has been an upstanding citizen as far as providing for his family, working, and helping others." ROA.173. Mr. Sanchez-Zurita had also submitted a letter of support from his girlfriend, Karen Lopez. ROA.163–64. Ms. Lopez explained that Mr. Sanchez is "honest, hard-working and completely trustworthy." ROA.37.

### 3.     Mr. Sanchez-Zurita's association with a minor child

The district court concluded that an upward variance was appropriate in part because "even after he was adjudicated a sex offender, he continued to associate with minor children. He appears to be a dangerous sex offender, and the need to protect the public is paramount in this case. He has never been charged with failure to register even though he has never done so." ROA.181.

15

The district court based its finding on a 2024 arrest, when officers found a five-year-old child in Mr. Sanchez-Zurita's vehicle. ROA.181. That child was the son of Mr. Sanchez-Zurita's girlfriend. ROA.167. Defense counsel had emphasized during the sentencing hearing that "[t]here ha[d] never been an allegation, other than this allegation in the presentence report where he pled guilty to the gratification of lust, that he had molested or done anything else to any other child." ROA.169. In a letter of support for Mr. Sanchez-Zurita, the mother the child stated that Mr. Sanchez-Zurita is "like the father my son never had. In his time, he has been present and has supported me unconditionally and has supported my son by providing education, quality time and guiding with love and respect a child who is not his." ROA.37.

## V.    Appeal

Mr. Sanchez-Zurita timely appealed. ROA.46–47 (notice of appeal); *see* Fed. R. App. P. 4(b). Before any briefing, both parties filed motions. The Government filed a motion to remand the case for resentencing. *See* Fifth Cir. ECF 28. The Government explained that Mr. Sanchez-Zurita's "counsel [had] brought a series of emails between [G]overnment's trial counsel and defense counsel to the [G]overnment's attention." Fifth Cir. ECF 28 at 2. It acknowledged that these emails, when read "[w]ith the benefit of hindsight" and "through a lens most favorable" to the defendant, suggested that the Government would inform the sentencing court

that it would be "satisfied with a guideline sentence." Fifth Cir. ECF 28 at 2. It also acknowledged that, at sentencing, it "did not make a recommendation as to the sentence" and "took no position on whether the court should order a variance." Fifth Cir. ECF 28 at 2 (citing ROA.165–66). The Government moved for a remand because it wanted "to fulfil any agreement it inadvertently made." Fifth Cir. ECF 28 at 3. Though the Government asked the Court to order a remand, it argued that any remand should be to the sentencing judge. Fifth Cir. ECF 35 at 3–6.

Mr. Sanchez-Zurita agreed that the case should be remanded, but he moved for reassignment to a different judge. Fifth Cir. ECF 29. Mr. Sanchez-Zurita argued that the Government had admitted that there was a plea agreement between the parties, at least when read in the light most favorable to the defendant. Fifth Cir. ECF 29, *see also* Fifth Cir. ECF 46 at 2. And he argued that the Court should order specific performance of the agreement with sentencing before a different judge. Fifth Cir. ECF 29 (motion for reassignment on remand), Fifth Cir. ECF 46 at 3–4 ("Specific performance is the appropriate remedy.").

A motions panel denied the Government's motion for remand, though it did not rule on Mr. Sanchez-Zurita's motion for reassignment on remand.[4] The panel concluded that there was no basis to vacate the sentence because "there was no plea

---

[4] Presumably, the Court did not rule on Mr. Sanchez-Zurita's motion because the Court deemed it moot upon denial of the Government's motion for remand.

agreement." Fifth Cir. ECF 52-1 at 3. It emphasized that "[n]either side has submitted any emails or other evidence of any agreement to our court, nor does the record contain any evidence of such an agreement." Fifth Cir. ECF 52-1 at 3. "To the contrary," the Court wrote, "the Government expressly warrants there was *no* agreement." Fifth Cir. ECF 52-1 at 3. The Court also stated that "neither side argues that Sanchez-Zurita is entitled to specific performance of any (apparently non-existent) agreement before a different sentencing judge." Fifth Cir. ECF 52-1 at 3.

After the panel entered its order, Mr. Sanchez-Zurita moved to supplement the record on appeal with emails exchanged between Government counsel and defense counsel. Fifth Cir. ECF 54-1. The clerk of court entered an order granting the motion to supplement the record. Fifth Cir. ECF 61-1; *see also* ROA.281–83.

# SUMMARY OF THE ARGUMENT

This Court should vacate Mr. Sanchez-Zurita's sentence and remand for resentencing by a different judge. In exchange for Mr. Sanchez-Zurita's open guilty plea, the Government agreed to represent that it was satisfied with a guideline sentence if the district court asked. Despite that agreement, the Government declined to comment when the district court asked for the Government's position on an upward variance. Mr. Sanchez-Zurita deserves specific performance of the plea agreement with resentencing by a different judge.

And the Court should vacate Mr. Sanchez-Zurita's sentence for two more reasons. First, the district court violated Mr. Sanchez-Zurita's right to due process and committed significant procedural error by relying on clearly erroneous facts and failing to adequately explain the nineteen-year upward variance.

Second, the sentence is substantively unreasonable because the district court failed to consider two important factors: whether the sentence was necessary to achieve the sentencing goals and whether the sentence created unwarranted sentencing disparities among defendants with similar records. And the district court gave significant weight to an irrelevant and improper factor: a perceived discrepancy in Mr. Sanchez-Zurita's surname.

This Court should vacate Mr. Sanchez-Zurita's sentence and remand for resentencing by a different judge.

## ARGUMENT

**I.     The Court should remand for resentencing before a different district judge because the Government breached the plea agreement.**

### A.     Standard of review

The Court reviews de novo a preserved claim that the Government breached a plea agreement. *United States v. Malmquist*, 92 F.4th 555, 562 (5th Cir. 2024). Mr. Sanchez-Zurita preserved his objection that the Government's sentencing position violated the parties' plea agreement. ROA.189.

### B.     When the Government breaches a plea agreement, a defendant is entitled to resentencing by a different judge.

When a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). A defendant bears the burden to prove by a preponderance of the evidence the existence of such a promise or agreement. *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011).

This Court gives the defendant the benefit of the doubt when it interprets a plea agreement. It requires the Government to "strictly adhere to the terms and conditions of its promises." *United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005). It "considers whether the Government's conduct was 'consistent with the defendant's reasonable understanding of the agreement.'" *Id.* (quoting *United States*

*v. Brown*, 328 F.3d 787, 790 (5th Cir. 2003)). And it construes ambiguities in favor of the defendant. *United States v. Escobedo*, 757 F.3d 229, 233 (5th Cir. 2014).

If the Government has breached a plea agreement, the defendant can choose the remedy: "either specific performance of the plea agreement and resentencing before a different judge, or withdrawal of the guilty plea."[5] *United States v. Williams*, 821 F.3d 656, 658 (5th Cir. 2016).

### C.   The Government breached its plea agreement with Mr. Sanchez-Zurita.

The Government and Mr. Sanchez-Zurita had a plea agreement. Though the parties did not enter a formal, written agreement, the pre-plea correspondence shows that defense counsel sought the Government's commitment to make a recommendation on sentencing "if [Mr. Sanchez-Zurita] pleads open." ROA.281. The prosecutor declined to make a sentencing recommendation but agreed to "state the [G]overnment would be satisfied with a guideline sentence" if the district court asked. ROA.281.

The Government breached that agreement. When the district court solicited the Government's position on an upward variance, the prosecutor did not represent

---

[5] The Court identified a potential caveat not relevant here: it may be "necessary first to find a breach to be material before allowing the defendant to rescind the plea agreement." *Williams*, 821 F.3d at 659.

that the Government was satisfied with a guideline sentence and instead left "the matter of sentencing to the [c]ourt's discretion." ROA.165–66.

In motions practice before this Court, the Government denied the existence of any plea agreement between the parties even though it asked this Court to remand the case for resentencing. Fifth Cir. ECF 28, 35. To support its argument that there was no plea agreement, the Government relied on Mr. Sanchez-Zurita's testimony at rearraignment. *See* Fifth Cir. ECF 35 at 2–3.

That testimony is not dispositive. In *United States v. Harrier*, 229 F. App'x 299, 301 (5th Cir. 2007),[6] this Court concluded that the Government and defendant had a plea agreement despite the district court's representations at rearraignment that it "'ha[d] no plea agreement,' 'there is no plea agreement,' [and] 'you have no plea agreement.'" The Court determined that though the parties had no written plea agreement, an oral plea agreement could be inferred from the facts: the defendant "pleaded guilty to count one of the indictment and the government dismissed count two"; the Government indicated its assent after the district court asked if it was "the government's agreement[] to dispose of this case by receiving a plea of guilty to one of the two counts"; and the defendant indicated his assent to the district court's

---

[6] Though unpublished, Mr. Sanchez-Zurita submits that the reasoning in *Harrier* is persuasive, and this Court should follow it.

understanding that "based upon the agreement by the government … your plea of guilty to count 1 of the indictment … would dispose of this entire case." *Id.* at 301.

Here, the record shows that when the Government and Mr. Sanchez-Zurita referred to the plea as "without the benefit of a plea agreement" and "open," ROA.59, 81, they meant that the parties did not have a formal, written plea agreement that required the Government to recommend the lower 50% of the guidelines. The pre-plea correspondence shows that Government counsel specified that she *would not* make an affirmative sentencing recommendation if Mr. Sanchez-Zurita pled open but she *would* tell the district court that the Government was satisfied with a guideline sentence if the district court asked.[7] ROA.281–83. Defense counsel met with Mr. Sanchez-Zurita the day of that email exchange and again the following week. ROA.60. Mr. Sanchez-Zurita entered an "open" guilty plea shortly thereafter. ROA.81. When the Government declined to take a position on the upwards variance, defense counsel objected to the Government's breach of the parties' plea agreement.[8] ROA.189.

The testimony at the change-of-plea colloquy does not undermine the existence of a plea agreement. At a minimum, the district court was ambiguous when

---

[7] The prosecutor also agreed to recommend the third level for acceptance of responsibility of Mr. Sanchez-Zurita plead open. ROA.282. Mr. Sanchez-Zurita was not eligible for the third level for acceptance of responsibility because of his base offense level. *See* USSG § 3E1.1(b).

[8] *See supra* at 12, n.3.

it explained to Mr. Sanchez-Zurita what it meant to plead guilty without an agreement. Even after learning that Mr. Sanchez-Zurita would plead without the benefit of a plea agreement, ROA.59, the district court advised him that it would solicit the Government's input about whether a guideline sentence was appropriate, *see* ROA.80.

And when the district court interrogated Mr. Sanchez-Zurita about his understanding of the open plea, it explained that the Government would not "make a recommendation in [the defendant's] favor," ROA.81, but it did not advise Mr. Sanchez-Zurita that the Government could have no input at sentencing. That explanation is fully consistent with the parties' plea agreement. The Government *did not* agree to make an affirmative sentencing recommendation in exchange for Mr. Sanchez-Zurita's open plea, but it *did* agree to inform that district court that it was satisfied with a guideline sentence if the district court asked.[9] ROA.281–83.

Finally, a motions panel of this Court concluded that there was no plea agreement. Fifth Cir. ECF 52-1. But that conclusion does not bind the Court. *See Texas v. United States Env't Prot. Agency*, 132 F.4th 808, 824–25 (5th Cir. 2025)

---

[9] In hindsight, the defense agrees that the parties should have placed this agreement on the record. *See* Fed. R. Crim. P. 11(c)(2). At the time, defense counsel did not recognize the need to do so because the agreement was atypical: the parties continued to refer to Mr. Sanchez-Zurita's plea as an open plea even though the Government made promises in exchange for the plea, and one of the Government's promises was contingent on the district court's inquiry into the Government's position (a contingency that occurred, *see* ROA.165–66).

(quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 176 (5th Cir. 2020)) ("[W]e have consistently stated that 'opinions and orders of a panel with initial responsibility for resolving motions filed in an appeal are not binding on the later panel that is assigned the appeal for resolution.'").

And there's good reason to reconsider it. The motions panel determined that there was no plea agreement because (1) there was no record evidence of a plea agreement; (2) the Government warranted that there was no plea agreement; and (3) no party asked for specific performance of the plea agreement. Fifth Cir. ECF 52-1. These reasons do not support the Court's conclusion.

The Court's first rationale has been overcome by events. The motions panel lacked the benefit of the email correspondence on which both parties relied to jointly request a remand to the district court. *See* Fifth Cir. ECF 28 and 29. That email correspondence is now part of the record. *See* ROA.281–83. It confirms the Government's promise to represent to the district court that it was satisfied with a guideline sentence if the district court asked. *See* ROA.281.

The Court's second rationale places too much emphasis on the Government's warranty. After all, the Government has been inconsistent about whether the parties had a plea agreement. At first, the Government sought a remand for resentencing because it wanted to "fulfil any *agreement* it inadvertently made." Fifth Cir. ECF 28 at 3 (emphasis added). When Mr. Sanchez-Zurita argued that he deserved

resentencing before a different judge, the Government changed its position, arguing that the parties had no plea agreement and that the Court should order a remand to allow the Government to fulfil "any *commitment* it inadvertently made." Fifth Cir. ECF 35 at 6 (emphasis added). These inconsistencies undermine the Government's warranty about the parties' plea agreement.

And third, the motions panel was wrong to conclude that no party had asked for specific performance. *See* Fifth Cir. ECF 52-1 at 3. In his response to the Government's motion for remand, Mr. Sanchez-Zurita incorporated a motion for reassignment on remand, Fifth Cir. ECF 29, and in his reply in support of that motion, Mr. Sanchez-Zurita argued that "[s]pecific performance is the appropriate remedy," Fifth Cir. ECF 46 at 3. Mr. Sanchez-Zurita has consistently argued that the Government breached its obligations under the plea agreement by refusing to take a position on an upward variance. *See* ROA.189 (objecting to the Government's breach), Fifth Cir. ECF 29 and 46 (requesting resentencing by a different judge).

The Government breached its agreement to represent that it was satisfied with a guideline sentence if the district court asked—a fact that the Government admitted in its motion for remand. Fifth Cir. ECF 28 at 3. Mr. Sanchez-Zurita deserves resentencing by a different judge. *See Williams*, 821 F.3d at 658.

**II.     The district court violated Mr. Sanchez-Zurita's right to due process and committed significant procedural error by selecting a sentence based on clearly erroneous facts and by failing to adequately explain the nineteen-year upward variance.**

An appellate court must ensure that the district court committed no procedural error in selecting its sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). If the district court procedurally erred, the Court must vacate the sentence and remand "unless the proponent of the sentence establishes that the error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). Here, the district court procedurally erred by relying on clearly erroneous facts about Mr. Sanchez-Zurita's surname, his work history, and his association with a minor child. It also failed to adequately explain the sentence.

**A.     Standard of review**

When a defendant preserves his objection to a procedural error, the Court reviews the district court's "interpretation and application of the Sentencing Guidelines de novo and its findings of fact for clear error." *United States v. Peterson*, 977 F.3d 381, 392 (5th Cir. 2020). A fact is clearly erroneous if it is implausible "in light of the record read as a whole." *See United States v. Aguilar-Alonzo*, 944 F.3d 544, 551 (5th Cir. 2019) (quoting *United States v. Dinh*, 920 F.3d 307, 310 (5th Cir. 2019)).

Mr. Sanchez-Zurita preserved his objections. Throughout the hearing, Mr. Sanchez-Zurita contested the clearly erroneous facts on which the district court relied. He argued that there was no evidence of a discrepancy in his name or birthdate and, if there were any, he was not responsible for the discrepancy, *see* ROA.174–78; he argued that he had been a gainful and productive resident of the United States, *see* ROA.168–69 (He "has been a hard worker. He has been a provider.") and ROA.173 ("[H]e has been an upstanding citizen as far as providing for his family, working, and helping others."); and he argued that there was no evidence that he had sexually abused any child after his deportation from the United States, *see* ROA.169 ("There has never been an allegation, other than this allegation in the presentence report where he pled guilty to the gratification of lust, that he had molested or done anything else to any other child.").

Mr. Sanchez-Zurita also objected to the district court's failure to adequately explain the upward variance. He objected that the factors on which the district court relied "such as his name or his date of birth, are not issues that are sufficient to require a variance." ROA.190. And he objected "to the variance and the reasons given, especially the nature of the sentence that has been imposed. It is unreasonable in light of the factors the [c]ourt laid out, and we would object to the variance." ROA.202.

**B.    This Court should vacate Mr. Sanchez-Zurita's sentence because the district court relied on clearly erroneous facts.**

A sentence based on clearly erroneous facts is unconstitutional and procedurally unreasonable. A defendant has "the right not to be sentenced on the basis of invalid premises," so a sentence "based upon erroneous and material information or assumptions" violates due process. *United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. 1981). And a district court commits significant procedural error when it "select[s] a sentence based on clearly erroneous facts." *Gall*, 552 U.S. at 51.

**1.    The district court relied on three clearly erroneous facts.**

**a.    The district court relied on clearly erroneous facts about discrepancies in Mr. Sanchez-Zurita's name and birthdate.**

The district court justified the upward variance in part because of its "question about [the defendant's] name and about his age." ROA.182. The district court's question is implausible in light of the record.

Start with Mr. Sanchez-Zurita's name. The probation officer testified that he had "no reason to doubt that [the defendant's] full name is Luis Javier Sanchez-Zurita." ROA.177. And the PSR details that Mr. Sanchez-Zurita consistently and accurately reported his name to law enforcement and immigration officials. *See* ROA.236, 238, 239.

Though the PSR identifies six aliases, all the aliases are variants of Mr. Sanchez-Zurita's name. ROA.234. And all but one of the aliases track the testimony

of Mr. Sanchez-Zurita and his interpreter about Mexican custom. *See* ROA.85–92. Though one alias (Luis J. Zurita) is inconsistent with that testimony because it includes only Mr. Sanchez-Zurita's maternal surname, Mr. Sanchez-Zurita testified that he had never used that alias. *See* ROA.89 (responding "no" to the court's question about whether Mr. Sanchez-Zurita had "ever given [his] last name without mentioning Sanchez"). And the probation officer could not contradict that testimony. He could say only that the name had appeared on a citation or on Mr. Sanchez-Zurita's NCIC report. ROA.177–78.

The same is true for Mr. Sanchez-Zurita's birthdate. Though there were minor discrepancies in the year of Mr. Sanchez-Zurita's birth, there was no evidence that he was responsible for the discrepancies. In seeking to attribute one of the discrepancies to Mr. Sanchez-Zurita, the district court clearly erred. First, the district court asserted that the alias birthdate came from documentation furnished by Mr. Sanchez-Zurita. ROA.174. That assertion was unfounded. The PSR includes no information that the police officer recorded the birth year after consulting documentation.

When defense counsel objected that the discrepancy in the birth year could not be attributed to Mr. Sanchez-Zurita because it was found on a citation that Mr. Sanchez-Zurita did not write, the district court "assume[d]" that Mr. Sanchez-Zurita had provided the information. ROA.176. But a district court cannot base a sentence

on "unfounded assumptions" or "groundless inferences." *Roberts v. United States*, 445 U.S. 552, 563 (1980) (Brennan, J., concurring). The record lacks any evidence allowing the district court to attribute any alleged discrepancies to Mr. Sanchez-Zurita.

### b. The district court relied on clearly erroneous facts about Mr. Sanchez-Zurita's work history.

The district court justified the upward variance in part because Mr. Sanchez-Zurita could not "show that he has been a gainful citizen. He can't identify employers. He can't identify any aspects of that employment in particular where it could be checked." ROA.190. The court explained that Mr. Sanchez-Zurita had "not been productive as a … would-be citizen of this country." ROA.190–91.

The district court violated Mr. Sanchez-Zurita's right to due process and procedurally erred. First, the district court improperly shifted the burden of proof to Mr. Sanchez-Zurita. The Government bears the burden to prove sentencing facts. *United States v. O'Bryant*, 136 F.3d 980, 981 (5th Cir. 1998). Instead of requiring the Government to show that Mr. Sanchez-Zurita had been unproductive or unemployed, the district court placed the burden on Mr. Sanchez-Zurita to prove his productivity and employment.

Second, the district court's factfinding was clearly erroneous. The PSR includes facts demonstrating Mr. Sanchez-Zurita's extensive work history. It details Mr. Sanchez-Zurita's duties, hours, and pay. ROA. 242–43. It notes that a third party

corroborated much of Mr. Sanchez-Zurita's work history. ROA.243. And it explains that Mr. Sanchez-Zurita provided at least $150 per week for the support of his child, providing circumstantial proof of Mr. Sanchez-Zurita's productivity. ROA.241. In addition, Mr. Sanchez-Zurita provided the district court with a letter of support describing him as "hard-working." ROA.37.

In contrast, the PSR does not allege that Mr. Sanchez-Zurita failed to work during his time in the United States. And the Government presented no such evidence. In light of this record, the district court clearly erred by imposing an upward variance based in part on Mr. Sanchez-Zurita's failure to prove his work history.

> **c.    The district court relied on clearly erroneous facts about Mr. Sanchez-Zurita's association with a minor child.**

The district court justified the upward variance in part because "even after he was adjudicated a sex offender, he continued to associate with minor children. He appears to be a dangerous sex offender, and the need to protect the public is paramount in this case. He has never been charged with failure to register even though he has never done so." ROA.181. The court based that finding on the fact that a child was with Mr. Sanchez-Zurita during his 2024 arrest. ROA.181.

The district court erroneously assumed that Mr. Sanchez-Zurita's continued association with minor children made him a dangerous sex offender. But that finding

is implausible in light of the record. The PSR and probation officer suggested that the child with Mr. Sanchez-Zurita was his girlfriend's son. *See* ROA.239 (calling the child Mr. Sanchez-Zurita's "stepson") and ROA.167 (noting the probation officer's belief that the child "was the son of [Mr. Sanchez-Zurita's] girlfriend."). Mr. Sanchez-Zurita's girlfriend informed the district court that he was a good father figure who provided "education, quality time and guiding with love and respect a child who is not his." ROA.37. In contrast, the record contains no evidence suggesting that Mr. Sanchez-Zurita had sexually abused any child after his deportation from the United States. The district court clearly erred by finding that Mr. Sanchez-Zurita's continued association with minor children made him a dangerous sex offender.

## 2.    The errors harmed Mr. Sanchez-Zurita.

The Government bears the burden to show that the district court's errors did not affect its chosen sentence. *See Delgado-Martinez*, 564 F.3d at 753. The Government cannot do so here for at least two reasons.

First, the district court expressly relied on the clearly erroneous facts during sentencing. In announcing the sentence, the district court referred to the "question" about Mr. Sanchez-Zurita's name and birthdate, ROA.182; Mr. Sanchez-Zurita's failure to prove his work history, ROA.190; and Mr. Sanchez-Zurita's continued association with a minor child, ROA.181. True, the district court gave other reasons

for the upward variance. *See, e.g.*, ROA.191, *see also* Fifth Cir. ECF 52-1. But this Court has held that clear factual errors harmed a defendant even though the district court listed other, legitimate reasons for imposing a variance. *United States v. Cruz-Pallares*, 396 F. App'x 170, 172 (5th Cir. 2010).[10]

Second, the extent of the variance proves that each of these factors was important. The district court sentenced Mr. Sanchez-Zurita to twenty years—an upwards variance of about nineteen years. The extent of the variance supports the inference that the district court relied on all the factors it mentioned to select the harshest sentence it could impose. If the Court finds that any one of these factors was clearly erroneous, the Court should remand to allow the district court to reconsider the extent of the variance absent the clearly erroneous fact.

## C. The district court procedurally erred by failing to adequately explain its chosen sentence.

A district court procedurally errs when it "fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. The district judge must "give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Id.* at 46. The district court's justification for its

---

[10] *See supra* at 22, n.6.

sentence must be sufficient "to allow for meaningful appellate review and … promote the perception of fair sentencing." *Id.* at 50.

This Court has held that "[t]he magnitude of the sentence impacts what counts as an adequate explanation." *United States v. Perkins*, 99 F.4th 804, 820 (5th Cir. 2024). In *Perkins*, the Court vacated a sentence and remanded for resentencing because the district court's explanation was insufficient to justify a 137-year variance. *Id.* at 817, 821. It rejected the Government's argument that the district court's explanation was adequate because the Court had previously upheld a similar explanation for a 41-month non-guideline sentence. *Id.* at 820. The Court "hesitate[d] to say that what is minimally sufficient for a 41-month sentence is also sufficient for a 137-year sentence. What is good for the goose, is good for the gander—but not necessarily a pterodactyl." *Id.*

Mr. Sanchez-Zurita's sentence is a pterodactyl. It's an upward variance of about nineteen years and more than 1,700% of the upper end of the guideline range. Though the district court provided several grounds for the upward variance, it made no attempt to justify the extent of the deviation. It concluded that the guideline range of 8–14 months was inadequate but jumped to a sentence of 20 years without explaining why a lesser term of imprisonment was insufficient to meet the sentencing goals. Though the district court's explanation might suffice for an upward

variance of a few months or even years, it does not justify an upward variance of the magnitude that the district court imposed.

### III. This Court should vacate the sentence and remand for resentencing because Mr. Sanchez-Zurita's sentence is substantively unreasonable.

#### A. Standard of review

The Court reviews "a preserved objection to the substantive reasonableness of a sentence for an abuse of discretion." *United States v. Cortez-Balderas*, 74 F.4th 786, 787 (5th Cir. 2023). Mr. Sanchez-Zurita preserved his substantive reasonableness argument by asking for a guideline sentence. ROA.170; *see Holguin-Hernandez v. United States*, 589 U.S. 169, 174–75 (2020).

#### B. The sentence is substantively unreasonable.

To review the substantive reasonableness of the sentence, the Court considers the "totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. An above-guideline sentence is substantively unreasonable when it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the factors." *Cortez-Balderas*, 74 F.4th at 787.

### 1. The district court did not account for factors that should have received significant weight.

The district court did not account for at least two factors that should have received significant weight. First, the district court failed to consider whether Mr. Sanchez-Zurita's sentence complied with the parsimony clause of 18 U.S.C. § 3553(a). In imposing a sentence, the district court must impose a sentence that is "not greater than necessary" to fulfill the statutory sentencing purposes. *See* § 3553(a). Though the district court found that Mr. Sanchez-Zurita deserved a "consequential" variance, ROA.191, it made no effort to analyze why Mr. Sanchez-Zurita deserved the harshest possible sentence.

And though the district court's analysis might support a custodial sentence, it does not support twenty years of custody. The district court noted that Mr. Sanchez-Zurita had not been deterred by leniency from prior proceedings in the form of voluntary departure and a suspended sentence. ROA.191. That reasoning might justify a term of imprisonment to send a stronger message, but it does not support a term of twenty years. *See United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001) (noting that a deterrence rationale based on prior sentences requires "an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses. … [I]f a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent

effect."). By failing to consider whether the length of the sentence was necessary to achieve the statutory sentencing purposes, the district court imposed a substantively unreasonable sentence.

Second, the district court did not consider "the need to avoid unwarranted sentence disparities." § 3553(a)(6). Mr. Sanchez-Zurita's sentence drastically exceeds nationwide norms. The average sentence for illegal reentry in fiscal year 2024 was 12 months. *See* United States Sentencing Commission, *Quick Facts: Illegal Reentry Offenses,* available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Illegal_Reentry_FY24.pdf (last accessed June 22, 2025). District courts varied upwards in just 4.3% of illegal reentry cases, and the average sentence increase was 74.5%. *Id.* at 2. By contrast, the district court sentenced Mr. Sanchez-Zurita to a sentence that varied upward by nearly 19 years and more than 1,700%. Mr. Sanchez-Zurita's sentence is substantively unreasonable because the district court failed to consider this significant disparity.

### 2. The district court gave significant weight to an irrelevant and improper factor.

The district court gave significant weight to an irrelevant and improper factor when it focused on Mr. Sanchez-Zurita's name. First, the district court's consideration of Mr. Sanchez-Zurita's name was irrelevant. Given that the record lacked any evidence that Mr. Sanchez-Zurita used the aliases—much less that he

used them to deceive—the fact that law enforcement attributed the aliases to Mr. Sanchez-Zurita has no bearing on any sentencing factor. *See* § 3553(a).

Second, the focus on Mr. Sanchez-Zurita's name was improper. "A defendant's … nationality may play no adverse role in the administration of justice, including at sentencing." *Pepper v. United States*, 562 U.S. 476, 489 (2011) (quoting *United States v. Leung*, 40 F.3d 577, 586 (2nd Cir. 1994)); *see also* USSG § 5H1.10 (National origin is "not relevant in the determination of a sentence.").

The district court's question about Mr. Sanchez-Zurita's name directly implicated his national origin and Mexican heritage. Mr. Sanchez-Zurita, his counsel, and the interpreter explained to the district court several times that people from Mexico typically use both their father's and mother's surnames in official documents but use only their father's surname in more casual contexts. *See* ROA.87, 89, 91–92. The PSR identifies aliases that largely track this naming custom. *See* ROA.234. Given the evidence that Mr. Sanchez-Zurita was transparent with law enforcement and immigration officials about his name, *see* ROA.236 238, 239, these variants likely arose from the uneasy fit of dual surnames in United States administrative and bureaucratic systems, *see* Yvonne M. Cherena Pacheco, *Latino Surnames: Formal and Informal Forces in the United States Affecting the Retention and Use of the Maternal Surname*, 18 T. Marshall L. Rev. 1, 15 (1992) ("[C]ultural supremacy, bureaucratic laziness, racism and simple ignorance combine to make it

exceptionally difficult for the latino,[11] as a practical matter, to obtain recognition for both last names."). By punishing Mr. Sanchez-Zurita for the aliases, the district court punished Mr. Sanchez-Zurita for a characteristic related to his national origin. The sentence is substantively unreasonable.

This Court should vacate Mr. Sanchez-Zurita's sentence and remand for resentencing because his sentence is substantively unreasonable.

## CONCLUSION

Mr. Sanchez-Zurita asks the Court to vacate his sentence and remand for resentencing by a different judge based on any or all grounds raised within.

Respectfully submitted,

**Omodare B. Jupiter**
Federal Public Defender

s/ *Michael L. Scott*
**Michael L. Scott**
Assistant Federal Public Defender

*Attorneys for Defendant-Appellant*

---

[11] The lowercase "l" appears in the original.

## CERTIFICATE OF SERVICE

I, Michael L. Scott, certify that on June 30, 2025, a copy of the Brief for Appellant was served upon counsel for the appellee by notice of electronic filing with the Fifth Circuit CM/ECF System.  A copy of this brief was also delivered via United States Mail, postage prepaid, to Defendant-Appellant Luis Javier Sanchez-Zurita.

s/ *Michael L. Scott*
**Michael L. Scott**
Assistant Federal Public Defender

## CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(g)(1) and 5TH CIR. R. 32.3, the undersigned

certifies as follows:

1.  This document complies with the type-volume limitations of FED. R. APP. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.2, this document contains 8,570 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5TH CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times New Roman type style in text and 12-point font size and Times New Roman type style in footnotes.

3.  This brief was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.

4.  This brief complies with the privacy-redaction requirements of 5TH CIR. R. 25.2.13 because it has been redacted of any personal data identifiers.

5.  This brief complies with the electronic-submission requirement of 5TH CIR. R. 25.2.1 because it is an exact copy of the paper document.

6.  This brief has been scanned for viruses with the most recent version of a commercial antivirus scanning program and is free of viruses.

Dated: June 30, 2025                         s/ *Michael L. Scott*
                                             **Michael L. Scott**
                                             Assistant Federal Public Defender